[Cite as *State v. Kelley*, 2014-Ohio-464.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13 CAA 04 0028 |
| | : | |
| ANDRE D. KELLEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court
                             of Common Pleas Case No. 12 CR I 07
                             0247


JUDGMENT:                     AFFIRMED



DATE OF JUDGMENT ENTRY:       February 4, 2014



APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

CAROL HAMILTON O'BRIEN                 ERIC ALLEN
DELAWARE CO. PROSECUTOR                713 South Front
Peter B. Ruffing                       Columbus, OH 43206
140 N. Sandusky St. 3rd Floor
Delaware, OH 43015

*Delaney, J.*

{¶1}  Defendant-appellant Andre D. Kelley appeals from the March 18, 2013 judgment entry of the Delaware County Court of Common Pleas finding him in violation of terms of his intervention-in-lieu-of-conviction (ILC) program, finding of guilty, and sentence upon three counts of cocaine trafficking.  Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2}  A statement of the facts underlying appellant's criminal convictions is not necessary to our disposition of this appeal.  On July 11, 2012, appellant was charged by indictment with three counts of cocaine trafficking pursuant to R.C. 2925.03(A)(1), all felonies of the fifth degree.

{¶3}  On October 22, 2012, appellant entered pleas of guilty as charged and was ordered to complete treatment in lieu of conviction.  The relevant terms of ILC required appellant to refrain from any misconduct or violation of the law; not to consume or possess any controlled or intoxicating substances; and to have no direct or indirect contact with felons, drug users, or drug sellers.  Also relevant, Item 20 of appellant's ILC terms and conditions states: "[Appellant] shall submit to a search, without a warrant of his person, property, or place of residence by a probation officer employed by the Delaware County Court of Common Pleas or the Adult Parole Authority at any time."

{¶4}  Appellant met with Erin Rohrer, his probation officer, for the first time on the same day he entered his pleas.  Rohrer discussed the terms and conditions of ILC and required appellant to submit to urinalysis which was positive for cocaine.  Appellant was not held accountable for a violation that day, but Rohrer warned he would continue to be drug-tested and his ILC conditions required him not to be using.

{¶5}   At appellant's November 8 appointment with Rohrer, he showed up late. Rohrer again discussed the conditions of his ILC, including required attendance at AA/NA meetings.

{¶6}   On November 29, appellant tested positive for cocaine and eventually admitted to Rohrer he used on November 26.  He was unable to verify his attendance at any AA or NA meetings.  Appellant acknowledged the positive drug test and drug use in writing.

{¶7}   Appellant failed to appear for his December 13 appointment, a Thursday. He called to say he had to stay late at work and would come in the next day.  Appellant also failed to appear on Friday, December 14, calling again to say he would come in on Monday.

{¶8}   Finally, on Monday, December 17, appellant appeared at Rohrer's office. He was immediately escorted into the bathroom by a male officer to provide a urine sample.  In the meantime his belongings were placed near the metal detector. Rohrer confiscated appellant's cell phone and reviewed its contents.  When appellant returned from the bathroom, she instructed him to put in the access code.  At first appellant claimed the phone belonged to his girlfriend, but eventually he put in the access code and Rohrer scrolled through his text messages.  She testified it was "[immediately] clear lots of illegal activity was going on."  Appellant was placed under arrest.

{¶9}   Rohrer testified it was apparent to her from the text messages that appellant continued to traffic in drugs.  To further her investigation, Rohrer asked Delaware County's information technology department to extract the texts from the phone and print them out, which was accomplished.

{¶10} Rohrer served appellant with notice of violation of the rules of ILC on January 29, 2013. She explained the delay between his initial arrest at the probation office and service of the notice of violations after a subsequent arrest: appellant was released for a brief period because he was expected to work with law enforcement but in fact never did so. Appellant was therefore arrested again at his residence on January 22.

{¶11} Rohrer testified appellant admitted the texts referenced his ongoing drug trafficking activity through December 17, after initiation of his ILC terms and conditions.

{¶12} Detective Cox of the Delaware County Drug Task Force testified at the suppression hearing regarding the content of the text messages. He cited a few of the most obvious: "cash, 50;" "what are we going to do?" "drink and smoke weed;" "hey boo, you have any more stuff;" "can I get 25;" "would I be able to get, like, 35 until Friday;" "no stuff;" "can I get some credit until tomorrow," etc. In Cox's opinion, the conversations were about drug sales and use, and the numbers referred to amounts of crack cocaine. He also opined two of the people communicating with appellant were known drug users, another violation of the terms of ILC.

{¶13} The January 29, 2013 Notice of Intervention in Lieu of Conviction Violation Hearing and Charges alleged appellant continued to traffic in drugs, tested positive for cocaine on October 22 and November 29, and maintained contact with known drug users. Appellant filed a Motion to Suppress/Denial of Violations, Request for Probable Cause Hearing/Evidentiary Hearing. Appellee responded with a memorandum contra.

{¶14} On March 13 and 14, 2013, the trial court held an evidentiary hearing. At the conclusion of the hearing the trial court overruled appellant's motion to suppress

and found him to be in violation of the terms and conditions of ILC. Appellant's ILC was revoked, the trial court found him guilty of three counts of trafficking in cocaine, and sentenced him to three consecutive 10-month prison terms.

{¶15} Appellant now appeals from the Judgment Entry Finding Defendant in Violation of Terms of Intervention in Lieu of Conviction, Finding of Guilty, and Sentence filed on March 18, 2013.

{¶16} Appellant raises four assignments of error:

## ASSIGNMENTS OF ERROR

{¶17} "I.   THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS."

{¶18} "II.  THE TRIAL COURT ABUSED ITS DISCRETION BY REVOKING THE INTERVENTION IN LIEU OF CONVICTION."

{¶19} "III.  THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A PRISON TERM INSTEAD OF A PERIOD OF COMMUNITY CONTROL."

{¶20} "IV.   THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING CONSECUTIVE SENTENCES."

## ANALYSIS

### I.

{¶21} In his first assignment of error, appellant argues the trial court erred in overruling his motion to suppress because the search of his cell phone and his arrest by his probation officer were constitutionally infirm. We disagree.

{¶22} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332,

713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶23} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶24} Appellant claims the warrantless search of his cell phone by his probation officer was improper in the absence of a warrant because he had committed no probation violation at the time of the search and did not voluntarily consent to the search. It is well-established, however, that a warrantless search performed pursuant to a condition of parole[1] requiring a parolee to submit to random searches of his or her person or property by a parole officer at any time is constitutional. *State v. Benton*, 82 Ohio St.3d 316, 695 N.E.2d 757 (1998), syllabus.

{¶25} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. In *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." One such exception exists when " 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), citing *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 748, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring). In *Griffin*, the Court recognized a state's operation of a probation system "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." The Court stated

---

[1] The cited case law refers to probation, parole, and ILC. ILC is comparable to probation, and those who are placed on ILC are monitored by the county probation department. R.C. 2951.041(D). The Ohio Supreme Court has held there is no material difference between probationers and parolees in the context of constitutional guarantees. *State v. Roberts*, 32 Ohio St.3d 225, 229, 513 N.E.2d 720 (1987).

"probationers * * * do not enjoy 'the absolute liberty to which every citizen is entitled, but only * * * conditional liberty properly dependent on observance of special [probation] restrictions.' " Griffin, supra, 483 U.S. at 873-874, citing *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The Court observed:

> [Probation] restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationers' being at large. * * * These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed. Recent research suggests that more intensive supervision can reduce recidivism * * * and the importance of supervision has grown as probation has become an increasingly common sentence for those convicted of serious crimes * * *. Supervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. Id., 483 U.S. at 875, 107 S.Ct. at 3169 (citations omitted).

{¶26} The Court continued to explain the rationale for the warrantless search exception applicable to probationers as follows: "A warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires. Moreover, the delay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct * * * an would reduce

the deterrent effect that the possibility of expeditious searches would otherwise create * * *." Id., 483 U.S. at 876, 107 S.Ct. at 3170.

{¶27} Thus, the *Griffin* court concluded that warrantless searches of a probationer's home and other property satisfies the Fourth Amendment's requirement of reasonableness if the warrantless search is "conducted pursuant to a valid regulation governing probationers." Id., 483 U.S. at 880, 107 S.Ct. at 3172, 97 L.Ed.2d 709; see, also, *State v. Benton*, 82 Ohio St.3d 316, 695 N.E.2d 757 (1998).

{¶28} Such a valid regulation exists here.  R.C. 2967.131(B) permits a parole or a probation officer to conduct warrantless searches of a parolee or a probationer if the officer possesses "reasonable grounds to believe that the [probationer] is not abiding by the law or otherwise is not complying with the terms and conditions" of probation. Thus, pursuant to *Griffin* and Ohio's regulatory scheme, a warrantless search of a probationer's home and other property does not violate the Fourth Amendment, provided the searching officer possesses reasonable grounds to believe that the probationer is in violation of the law or of the conditions and terms of probation.

{¶29} Appellant contends, however, that Rohrer had no reasonable grounds to search the phone because he was not in violation of his ILC conditions when she seized it: the drug test he performed was negative.  We disagree.  To satisfy the "reasonable grounds" standard, an officer need not possess the level of certainty required for "probable cause." *Griffin*, 483 U.S. at 877-78, 107 S.Ct. at 3170-71, 97 L.Ed.2d 709. Rather, the Fourth Amendment's reasonableness requirement for warrantless searches of probationers is satisfied if the information provided to the searching officer "indicates * * * only the likelihood * * * of facts justifying the search." Id., 483 U.S. at 880, 107 S.Ct.

at 3172.  In this case, appellant had missed two appointments with his probation officer, showed up late on this date, and had a history of positive drug screens.  We find Rohrer had reasonable grounds to conclude appellant was not complying with the terms of ILC despite the resulting negative drug screen on December 17.

{¶30} Rohrer's search of appellant's cell phone and his subsequent arrest are not unconstitutional.  Appellant's first assignment of error is overruled.

II.

{¶31} In his second assignment of error, appellant contends the trial court abused its discretion in finding appellant violated the terms of ILC resulting in its revocation.  We disagree.

{¶32} ILC is comparable to probation, and those who are placed on ILC are monitored by the county probation department. R.C. 2951.041(D).   Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. *State v. Ryan*, 3rd Dist. Union No. 14-06-55, 2007-Ohio-4743, citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Therefore, the minimum due process requirements afforded a defendant in a probation revocation proceeding differ from those in a criminal trial. The minimum due process requirements for revocation hearings are as follows:

> (a) Written notice of the claimed violations of [probation or] parole;
>
> (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically

finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking [probation or] parole.

*State v. Miller*, 42 Ohio St.2d 102, 104, 326 N.E.2d 259 (1975), quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

{¶33} Appellant does not contend he was denied any of the above.

{¶34} A community control or probation revocation is not a criminal trial; therefore, appellee is not required to establish a violation of the terms of community control "beyond a reasonable doubt." *Ryan,* supra, 2007–Ohio–4743, ¶ 7, citing *State v. Hylton*, 75 Ohio App.3d 778, 600 N.E.2d 821 (4th Dist.1991). Instead, appellee must show "substantial" proof appellant violated the terms of his community control sanctions. Id. Substantial evidence is akin to a preponderance-of-the-evidence burden of proof. *State v. Ohly,* 166 Ohio App.3d 808, 2006–Ohio–2353, 853 N.E.2d 675, at ¶ 18, citing *State v. Hayes*, 6th Dist. No. WD–00–075,unreported, 2001 WL 909291 (Aug. 10, 2001). "Substantial evidence is considered to consist of more than a mere scintilla of evidence, but somewhat less than a preponderance." Id., citations omitted.

{¶35} A trial court's finding of a violation of community control will not be disturbed on appeal absent an abuse of discretion. *State v. Burdette,* 5th Dist. Morrow No. 10-CA-9, 2011-Ohio-4425, *4. An abuse of discretion implies more than an error of law or judgment; instead, it connotes that the trial court's attitude is unreasonable,

arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying the abuse of discretion standard, an appellate court may not simply substitute its judgment for that of the trial court. Id. Moreover, in terms of credibility determinations, the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

{¶36} We find appellee demonstrated substantial proof appellant engaged in drug trafficking and associated with drug users after the imposition of ILC terms and conditions; appellee is not required to prove either beyond a reasonable doubt in this context. Moreover, appellant's acknowledged positive drug screens, standing alone, are sufficient basis to revoke ILC, despite his arguments to the contrary. We note that "the privilege of probation rests upon the probationer's compliance with the probation conditions and any violation of those conditions may properly be used to revoke the privilege." *State v. Bell*, 66 Ohio App.3d 52, 57, 583 N.E.2d 414 (1990).

{¶37} Appellant's second assignment of error is overruled.

III.

{¶38} In his third assignment of error, appellant argues the trial court erred in sentencing him to prison instead of imposing a community control sanction. We disagree.

{¶39} In *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Ohio Supreme Court set forth a two-step process for examining felony sentences. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and

convincingly contrary to law." *Kalish* at ¶ 4. If this first step "is satisfied," the second step requires the trial court's decision be "reviewed under an abuse-of-discretion standard." *Id.*

{¶40} R.C. 2929.13(B) states:

(B)(1)(a) Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction of at least one year's duration if all of the following apply:

(i) The offender previously has not been convicted of or pleaded guilty to a felony offense.

(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

(iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.

(iv) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender

committed within two years prior to the offense for which sentence is being imposed.

(b) The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of the following apply:

(i) The offender committed the offense while having a firearm on or about the offender's person or under the offender's control.

(ii) If the offense is a qualifying assault offense, the offender caused serious physical harm to another person while committing the offense, and, if the offense is not a qualifying assault offense, the offender caused physical harm to another person while committing the offense.

(iii) The offender violated a term of the conditions of bond as set by the court.

(iv) The court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, and the department, within the forty-five-day period specified in that division, did not provide the court with the name of, contact information for, and program details of any community control sanction of at least one year's duration that is available for persons sentenced by the court.

(v) The offense is a sex offense that is a fourth or fifth degree felony violation of any provision of Chapter 2907. of the Revised Code.

(vi) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.

(vii) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.

(viii) The offender held a public office or position of trust, and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.

(ix) The offender committed the offense for hire or as part of an organized criminal activity.

(x) The offender at the time of the offense was serving, or the offender previously had served, a prison term.

(xi) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.

{¶41} In this case, the trial court specifically found appellant was in violation of conditions of bond and committed the offenses as part of organized criminal activity. We find the sentence is not clearly and convincingly contrary to law. Furthermore, having thoroughly reviewed the record of this case, we are unwilling to find the trial court abused its discretion in sentencing appellant to a prison term in light of his repeated violations of the terms of ILC.

{¶42} Appellant's third assignment of error is overruled.

IV.

{¶43} Appellant argues the trial court abused its discretion in sentencing him to consecutive prison terms in his fourth assignment of error. We disagree.

{¶44} 2011 Am.Sub.H.B. No. 86, which became effective on September 30, 2011, revived language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4). The General Assembly has thus expressed its intent to revive the statutory fact-finding provisions pertaining to the imposition of consecutive sentences that were effective pre-Foster. See *State v. Wells,* 8th Dist. Cuyahoga No. 98428, 2013–Ohio–1179, ¶ 11. These revisions to the felony sentencing statutes now require a trial court to make specific findings when imposing consecutive sentences. Nonetheless, "[a]lthough H.B. 86 requires the trial court to make findings before imposing a consecutive sentence, it does not require the trial court to give its reasons for imposing the sentence." *State v. Bentley,* 3rd Dist. Marion No. 9–12–31, 2013–Ohio–852, ¶ 12, citing *State v. Frasca,* 11th Dist. Trumbull No.2011–T–0108, 2012–Ohio–3746, ¶ 57.

{¶45} The record must clearly demonstrate that consecutive sentences are not only appropriate but also clearly supported by the record. See *State v. Queer,* 5th Dist. Ashland No. 12–COA–041, 2013–Ohio–3585, ¶ 21.

{¶46} R.C. 2929.14(C)(4) provides, in relevant part:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶47} In this case, the trial court found consecutive sentences are necessary to protect the public from future harm or to punish the defendant and that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public.  The trial court further found at least two of the offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the defendant's conduct.  We find the trial court did not abuse its discretion in imposing consecutive sentences.

{¶48} Appellant's consecutive sentences are appropriate and are supported by the record.  His fourth assignment of error is overruled.

**CONCLUSION**

{¶49} Appellant's four assignments of error are overruled for the reasons stated in the foregoing opinion and the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, J. and

Gwin, P.J.

Hoffman, J., concur.